## UNITED STATES v. STONE et al.

(District Court, D. New Jersey. March 2, 1905.)

**1. INDICTMENT—SUFFICIENCY—FAILURE TO NEGATIVE EXCEPTION IN STATUTE.**

An indictment based on Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], charging a conspiracy to defraud the United States by causing the violation of another statute subsequently enacted, need not negative an exception found in the later statute, which, being entirely separable from the section upon which the indictment is founded, is matter of defense.

[Ed. Note.—For cases in point, see vol. 27, Cent. Dig. Indictment and Information, §§ 295–298.]

**2. CONSPIRACY TO DEFRAUD UNITED STATES—INDICTMENT—AVERMENT OF INTENT.**

An indictment under Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], for conspiracy to defraud the United States, which sets out the unlawful agreement, need not aver an intent upon the part of the accused to defraud the United States.

**3. SAME—DESCRIPTION OF OFFENSE.**

An indictment for conspiracy to defraud the United States, which charged that defendants secretly inserted a piece of iron weighing half a pound in the center of each of a large number of cork blocks made by them, intending that such blocks should be used in making life preservers for the equipment of steamers navigating the ocean and lakes, bays and sounds of the United States, *held* to sufficiently show that life preservers so made would not fulfill the law and regulations of the United States, which require that every such life preserver shall be made of good, sound cork blocks, and shall contain at least six pounds of good cork, which shall have a buoyancy of at least four pounds to each pound of cork.

**4. SAME—ESSENTIALS OF OFFENSE.**

To constitute the offense of conspiring "to defraud the United States" under Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], it is not essential that the conspiracy should have been to commit an act in violation of a criminal statute.

**5. SAME—DECEIVING GOVERNMENT OFFICERS—FRAUDULENTLY INDUCING APPROVAL OF DEFECTIVE LIFE PRESERVERS.**

The provision of Rev. St. § 5440 [U. S. Comp. St. 1901, p. 3676], which makes it a criminal offense to conspire "to defraud the United States in any manner or for any purpose," is not limited in its application to conspiracies to deprive the United States of money or property, but should be broadly construed to protect the government in its rights, privileges, operations, and functions against all fraudulent operations; and an indictment is good thereunder which avers facts sufficiently showing that defendants conspired to deceive inspectors of the United States in the exercise of their official functions by fraudulently inducing them to approve life preservers which did not in fact comply with the requirements of the federal law, and that they committed overt acts pursuant to such conspiracy.

## On Demurrers to Indictment.

Each of the four defendants has filed a demurrer to the indictment in this case, and specified causes of demurrer which are the same in form and substance. The indictment charges the defendants with a conspiracy to defraud the United States by manufacturing and selling, for use in making life preservers, compressed cork blocks with pieces of iron concealed in their centers.

Section 5440 of the Revised Statutes [U. S. Comp. St. 1901, p. 3676] of the United States reads as follows: "If two or more persons conspire either to commit any offense against the United States or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy all the parties to such

conspiracy shall be liable to a penalty of not more than ten thousand dollars, or to imprisonment for not more than two years or to both fine and imprisonment in the discretion of the court." Other provisions of the law necessary to be considered are the first part of section 4400 of the Revised Statutes [U. S. Comp. St. 1901, p. 3015], which is as follows: "All steam vessels navigating any waters of the United States which are common highways of commerce, or open to general or competitive navigation, excepting public vessels of the United States, vessels of other countries, and boats propelled in whole or in part by steam for navigating canals, shall be subject to the provisions of this title" (title 52, concerning "Regulation of Steam Vessels"). And section 4405 [U. S. Comp. St. 1901, p. 3017], which is as follows: "The supervising inspectors and the supervising inspector general shall assemble as a board once in each year, at the city of Washington. * * * The board shall establish all necessary regulations required to carry out in the most effective manner the provisions of this title, and such regulations, when approved by the Secretary of the Treasury, shall have the force of law." And section 10 of the act entitled "An act to establish the Department of Commerce and Labor," approved February 14, 1903, c. 552, 32 Stat. 829 [U. S. Comp. St. Supp. 1903, p. 48], which is as follows: "All duties, power, authority and jurisdiction, whether supervisory, appellate, or otherwise, now imposed or conferred upon the Secretary of the Treasury by acts of Congress relating to * * * steamboat inspection service and any of the officials thereof, shall be and hereby are transferred to and imposed and conferred upon the Secretary of Commerce and Labor from and after the time of the transfer of the * * * steamboat inspection service to the Department of Commerce and Labor, and shall not thereafter be imposed upon or exercised by the Secretary of the Treasury." And section 4488 [U. S. Comp. St. 1901, p. 3055], which is as follows: "Every steamer navigating the ocean or any lake, bay or sound of the United States shall be provided with such numbers of * * * life preservers * * * as will best secure the safety of all persons on board such vessel in case of disaster. * * * And the board of supervising inspectors shall fix and determine by their rules and regulations the kind of * * * life preservers * * * that shall be used on such vessels. * * *" And section 18 of rule 3 of the general rules and regulations of the board of supervising inspectors of the steamboat inspection service of the United States, approved by the Secretary of Commerce and Labor, which is as follows: "Every life preserver adjustable to the body of a person shall be made of good sound cork blocks or other suitable material. * * * And it shall be the duty of the inspectors to see by actual examination that every such life preserver contains at least six pounds of good cork, which shall have a buoyancy of at least four pounds to each pound of cork. * * *" And section 4417 of the Revised Statutes [U. S. Comp. St. 1901, p. 3024], which is as follows: "The local inspectors shall, once in every year at least, upon application in writing of the master or owner * * * satisfy themselves * * * that all the requirements of law in regard to * * * life preservers * * * are faithfully complied with. * * *"

The indictment declares that since February 1, 1904, under the laws of the United States and the regulations of the board of supervising inspectors approved by the Secretary of Commerce and Labor, the master or owner of every steamer navigating the ocean or any lake, bay, or sound of the United States has been required to provide such steamer with such numbers of suitable life preservers as would best secure the safety of all persons on board such vessel in case of disaster; that under said laws and regulations it has been and is the duty of the inspectors in the steamboat inspection service of the United States to satisfy themselves that as to every vessel submitted to their inspection all requirements of law in regard to life preservers have been faithfully complied with, and to see by actual examination that every life preserver so provided contains at least six pounds of good cork having a buoyancy of at least four pounds to each pound of cork; that it is impracticable for the inspectors, in examining life preservers, to open the blocks of cork of which the life preservers are constructed to ascertain whether the cork is good, for the reason that such action would result in a destruction of

the life preservers; that the firm of David Kahnweiler's Sons have been engaged in New York City in the business of manufacturing life preservers and selling them to the masters and owners of steamers navigating the Atlantic Ocean, Long Island Sound, and many of the bays and lakes of the United States; that in the conduct of its business Kahnweiler's Sons have been accustomed to purchase from the Nonpareil Corkworks of Camden, N. J., great numbers of compressed cork blocks for use in the manufacture of life preservers, and that great numbers of such blocks have actually been used by Kahnweiler's Sons in the manufacture of life preservers, these life preservers having been sold by Kahnweiler's Sons to the masters and owners of vessels navigating the waters above mentioned, and each life preserver containing eight of the compressed cork blocks; that shortly before August 8, 1904, Kahnweiler's Sons purchased from the Nonpareil Corkworks 1,750 of these compressed cork blocks to be used in the manufacture of life preservers for service on vessels navigating the waters above mentioned; that Kahnweiler's Sons found that the cork blocks so purchased were light in weight eight of them weighing but five and one-half pounds; that on August 8, 1904, Kahnweiler's Sons notified the Nonpareil Corkworks of the fact of such shortage in weight, and requested the Nonpareil Corkworks "to make the said blocks heavier, so that eight of them would weigh at least six pounds, and so pass inspection under the laws and regulations aforesaid when used in such life preservers." The indictment then proceeds to charge that the four defendants, one being the president, one the resident manager, one the superintendent, and one the assistant superintendent of the Nonpareil Corkworks, on August 12, 1904, after the receipt of the above-mentioned request from Kahnweiler's Sons, did unlawfully "conspire, combine, confederate, and agree together, and with divers other persons to the said grand jurors unknown, knowingly, wickedly, and corruptly to defraud the said United States, by manufacturing and producing at the said factory at Camden aforesaid, and shipping to the said firm of David Kahnweiler's Sons, at New York City, aforesaid, in response to the said request of the said firm to make the said blocks heavier, without giving any notice to the said firm of their true character, a great number, to wit, two hundred and fifty, compressed cork blocks of the kind aforesaid, each having fraudulently and deceitfully inclosed in its center, in the process of such manufacture, a bar of iron weighing eight ounces, and recommending that the same should be used by the said firm in connection with the said light-weight blocks before then purchased by it as aforesaid, in the manufacture of such life preservers, that is to say, one of such blocks containing iron to seven of such light-weight blocks, and thereby, and through the sale thereof by the said firm, necessarily, fraudulently, and corruptly causing to be used upon steamers of the kind aforesaid, contrary to the said laws and regulations, a great number, to wit, 2,000, life preservers, each containing less than six pounds of cork, to wit, five pounds and eight ounces of cork, and having a bar of iron weighing eight ounces inclosed in each of the same to make up such shortage in the weight of cork, in such a manner as to deceive the said firm and the purchasers of life preservers made from the said blocks, as well as the said inspectors in endeavoring to perform their said duty, and in grievous prejudice of the administration of the said laws and regulations to cause such inspectors to unwittingly approve and pass such life preservers on inspection as being such suitable and lawful life preservers, each containing at least six pounds of cork, as would best secure the safety of all persons on board of such vessels in case of disaster, when they would not and could not lawfully have approved or passed the same if the facts of the shortage in weight of cork and the presence of iron therein had been disclosed to or ascertained by them at the time of making examination thereon in their official capacity as such inspectors, iron being a substance having no buoyancy in water, and entirely unfit for use in making life preservers; they (the said J. H. Stone, H. C. Quintard, Charles W. Russ, and James Russ) then and there well knowing all the premises aforesaid, and well knowing that the unlawful character of such life preservers would, by reason of such iron bars being so deceptively and fraudulently inclosed in the cork blocks composing the same, not be subject to detection in the ordinary course of examination by such inspectors, and intending that the same should

not be detected in such examination, and well knowing that such life preservers would, and intending that they should, be approved and passed by such inspectors in such examination as suitable and lawful life preservers containing at least six pounds of cork, and used as life preservers upon vessels of the kind aforesaid, and intending not to disclose to any person belonging to the said firm or purchasing or using or inspecting such life preservers the fact that there was less than six pounds of cork in each of the same, or the fact that iron was so inclosed in each of the said life preservers. And the grand jurors aforesaid, upon their oath aforesaid, do further present that in pursuance of the said unlawful conspiracy, combination, confederation and agreement, and to effect the object of the same, the said James Russ afterwards, to wit, on the 20th day of August, in the same year of our Lord 1904, at Camden aforesaid, in the said district, unlawfully did direct and cause one James Jones to make a great number, to wit, two hundred and fifty, of the said compressed cork blocks, at the said factory, each containing a bar of iron weighing eight ounces; and that further, in pursuance of the said unlawful conspiracy, combination, confederation, and agreement, and to effect the object of the same, the said J. H. Stone afterwards, to wit, on the 30th day of August, in the year aforesaid, at New York City aforesaid, in the state of New York, unlawfully did cause to be sent by mail to the said firm of David Kahnweiler's Sons a certain letter—that is to say, a letter which, omitting the printed letter head thereof, which it is impossible to here reproduce, and the date and address thereof, is of the tenor which here follows, to wit: 'Replying to yours of the 27th, would advise that the 71 bags of blocks on the dock are not light weights, but full weights, and we believe that the two crates which we shipped you containing 261 special heavy blocks, will be all that you require. If after using them you find that you are still short, let us know how many you need and we will send them. Yours very truly [Signed] Nonpareil Corkworks, J. H. Stone, Manager;' against the peace and dignity of the said United States, and contrary to the form of the statute of the same in such case made and provided."

Clarence E. Thornall, Wendell J. Wright, David O. Watkins, and Edmund W. Wakelee, for demurrants.

John B. Vreeland, Dist. Atty., and Theodore B. Booraem, Asst. Dist. Atty., for the United States.

LANNING, District Judge (after stating the facts). The first cause of demurrer to the indictment is that "the indictment does not negative the exceptions contained in the statute and regulations mentioned in said indictment." This objection to the indictment is based on the provision in section 4400 of the Revised Statutes [U. S. Comp. St. 1901, p. 3015] which excepts public vessels of the United States from the legislation contained in title 52 concerning "Regulation of Steam Vessels." Sections 4405, 4417, and 4488 [U. S. Comp. St. 1901, pp. 3017, 3024, 3055], the provisions of which are plainly referred to in the indictment, are, with section 4400, parts of title 52. The rule for negativing exceptions in pleadings is frequently stated to be that, if the exception is contained in the enacting clause of the statute, the party pleading must show that the accused is not within the exception, but that, if it be in a subsequent clause or statute, or in a proviso, that is matter of defense, which must be shown by the accused. In United States v. Cook, 17 Wall. 168, 21 L. Ed. 538, the rule was stated with a material modification of the form in which it is usually expressed. In that case it was said:

"Where a statute defining an offense contains an exception in the enacting clause of the statute, which is so incorporated with the language defining the offense that the ingredients of the offense cannot be accurately and clearly

described if the exception is omitted, the rules of good pleading require that an indictment founded upon the statute must allege enough to show that the accused is not within the exception; but if the language of the section defining the offense is so entirely separable from the exception that the ingredients constituting the offense may be accurately and clearly defined without any reference to the exception, the pleader may safely omit any such reference, as the matter contained in the exception is matter of defense, and must be shown by the accused."

The substance of the charge in the indictment now under review is that the defendants are guilty of a conspiracy to defraud the United States, contrary to the provisions of section 5440 of the Revised Statutes. In that section there is no exception. Section 5440 is not a part of title 52, concerning "Regulation of Steam Vessels." It is a part of title 70, concerning "Crimes," and was originally passed in 1867, while sections 4400, 4405, 4417, and 4488, now in title 52, in the forms in which they at first stood, were not passed until 1871. As the exception referred to is in a section of the statute passed subsequent to the enactment of section 5440, as the two sections are not now in the same title, and as section 4400 defines no ingredient of the offense mentioned in section 5440, I think the first ground of demurrer is invalid.

The second cause of demurrer is that "the indictment alleges no intent on the part of the said defendant to defraud the United States." This is not necessary. The charge is that the defendants conspired to defraud the United States, and the intent to defraud will be inferred from the unlawful agreement set forth in the indictment. United States v. Donau, Fed. Cas. No. 14,983.

The fourth cause of demurrer is that "said indictment does not show that the life preservers mentioned therein did not come up to the requirements of the law or the regulations mentioned in said indictment." The statute requires that the board of supervising inspectors shall fix and determine by their rules and regulations the kind of life preservers that shall be used on steamers navigating the ocean, or any lake, bay, or sound of the United States, and also that they shall establish all necessary regulations required to carry out in the most effective manner the provisions of the law and such regulations when approved by the Secretary of Commerce and Labor. Those rules and regulations require every life preserver to contain "at least six pounds of good cork, which shall have a buoyancy of at least four pounds to each pound of cork." The rules and regulations of the board of inspectors have the force of law, not only by virtue of the express language of section 4405 of the Revised Statutes, but by virtue of the rule stated in the Kollock Case, 165 U. S. 526, 17 Sup. Ct. 444, 41 L. Ed. 813, and Caha v. United States, 152 U. S. 212, 14 Sup. Ct. 513, 38 L. Ed. 415. The indictment charges with sufficient clearness that the defendants intended that eight of the blocks of cork manufactured by them should be used in the manufacture of one life preserver, that eight of the blocks first delivered weighed but five and one-half pounds, and that, in order to bring them up to the requisite weight of six pounds, there was inclosed in the center of each of two hundred and fifty blocks subsequently delivered a half pound of iron, with intention that one of the blocks containing the iron should be used with seven light-weight blocks, so that the life preservers thus made of eight blocks would each

weigh six pounds. I think the indictment sufficiently alleges that the life preservers did not fulfill the requirements of the law and the rules and regulations of the board of supervising inspectors.

The fifth cause of demurrer is that "said indictment does not show facts constituting a crime, for the reason that the intention of the law and regulations is that life preservers shall have the buoyancy of at least twenty-four pounds, and the indictment does not show or allege that the life preservers in question would not have had a buoyancy of at least twenty-four pounds if made up as alleged in said indictment." The rules provide that it shall be the duty of the inspector to see by actual examination that every life preserver contains "at least six pounds of good cork." From the allegations in the indictment it appears that the life preservers proposed to be made up from the blocks furnished by the defendants would not contain six pounds of good cork. It is an essential provision of the rule that a life preserver shall not only have a buoyancy of at least four pounds to each pound of cork, but that it shall also contain at least six pounds of good cork.

The third and sixth causes of demurrer are as follows: "The said indictment does not show any act of the said defendant by which the United States was or could be defrauded;" and "the said indictment does not show any act or conspiracy within the meaning of section 5440 of the Revised Statutes of the United States." These two causes present the most serious questions raised by the demurrers. It is insisted that the life preservers to be made from the blocks furnished by the defendants were not to be delivered to the United States or sold to the United States, and that the United States therefore could not, by any of the acts charged in the indictment, be defrauded. It is also said that the indictment, to be good, must show that the defendants have entered into a conspiracy to violate some criminal statute of the United States. But such construction of the section renders the clause relating to the defrauding of the United States meaningless. The section provides that, if two or more persons conspire "either to commit any offense against the United States or to defraud the United States in any manner or for any purpose," they shall, if one or more of them do any act to effect the object of the conspiracy, be liable to a penalty. The defendants' construction of the section would make it apply only to a conspiracy to commit an offense against the United States. It is evident that the meaning of the section is much broader. If two or more persons conspire "to defraud the United States," not merely contrary to the provisions of any criminal statute, but "in any manner or for any purpose," they shall, if one or more of them do an act to effect the object of the conspiracy, be punishable therefor. May not the United States be defrauded "in any manner or for any purpose" except where it is deprived of its taxes, moneys, or property? If there be a conspiracy between two or more persons to deceive the officers of the government in their execution of a governmental duty for the purpose of securing their unwitting approval of what the law condemns, is not that a conspiracy to defraud the United States of one of its governmental functions? Section 5440 is a revision of section 30 of the act entitled "An act to amend existing laws relating to internal revenue, and for other purposes," approved March 2, 1867 (14 Stat.

484, c. 169). In its original form the clause concerning the defrauding of the United States was "to defraud the United States in any manner whatever." If it be assumed that the section in its original form, and as a part of the act of 1867, was not applicable to any frauds except those concerning the internal revenue, the section in its present form and place cannot be so limited. In the revision of 1878 it was transferred from its place in the internal revenue law to a place in the law concerning crimes, and to the subdivision of crimes entitled "Crimes against the Operations of the Government." At the same time the clause concerning frauds was changed to the form "to defraud the United States in any manner or for any purpose." Obviously, it was the legislative intention by these changes of language and place to make the section applicable not only to conspiracies to defraud the United States of its revenue, but to every conspiracy to defraud the United States, whatever the purpose of the conspiracy might be. In United States v. Whalan, Fed. Cas. No. 16,669, Judge Lowell, of the District Court for the District of Massachusetts, declared that the word "conspiracy" in section 5440 has a more comprehensive meaning than is given to it by the common law, "because it includes defrauding the United States in any manner whatever, whether the fraud had been declared a crime by any statute or not," and that the section "has a wide application, and covers all frauds which human ingenuity can devise." In United States v. Thompson (C. C.) 29 Fed. 86, it was held that the section as it now stands "must be construed to include every conceivable case of conspiracy to defraud the United States; that is, to deprive or divest it of any property, money, or thing otherwise than as the law requires or allows." In Palmer v. Colladay, 18 App. Cas. 426, the Court of Appeals of the District of Columbia, commenting on section 5440, said:

"It is claimed by appellee that to defraud the United States must mean to deprive it of money wrongfully, or of something of money value; and that a falsehood or trick by which its officers are deceived in the matter of selecting those who are to perform work for it could not be a fraud against the United States. We do not agree to this proposition. The civil service commission is a legal agency of the United States, created by act of Congress; and through it the President undertakes to find and appoint such persons as may best promote the efficiency of the civil service; and to that end regulations are prescribed by means of which the age, health, character, knowledge, and ability for the branch of service into which he seeks to enter, of each candidate, may be fully ascertained. If falsehoods are imposed upon the persons charged with the duty of ascertaining these qualifications, and made to take the place of facts, then the United States is defrauded, is deprived by deceit of the knowledge justly due to its officers in the proper discharge of its business, and it is thereby liable to obtain a less efficient employé. We think the trial court may properly hold that the appellee's alleged conduct, in co-operation with the candidate in this case, in making a false statement as to her past experience, constitutes an offense under this section 5440; and that such attempt at deception, if successfully carried out, would defraud the United States, within the meaning of the law."

It was the opinion of the Circuit Court of Appeals of the First Circuit, as expressed in Curley v. United States, 130 Fed. 1, that Congress intended, by section 5440, to protect the government "in its rights, privileges, operations, and functions against all fraudulent operations, impositions upon its rights as well as properties, and to this end em-

ployed the most general terms and the broadest possible phraseology." It was there held that the words "defraud" and "deceive" are nearly synonymous, and that section 5440 "contemplates wrongs other and beyond conspiracies to commit distinct statutory offenses against the United States," and that the government may "safeguard itself against being defrauded out of its right to administer an intelligent and honest service in the interests of the people." In that case the indictment was for a conspiracy to defraud the United States, and the charge was that one of the defendants, desiring to procure an appointment as letter carrier, unlawfully agreed with the other of the defendants that the latter should falsely impersonate the former at a civil service examination, sign the name of the former to the examination papers, and thus secure for the former the placing of his name on the list of persons eligible to appointment as letter carriers. On the trial the defendants were convicted, and the Circuit Court of Appeals refused to disturb the verdict, holding that the defendants by the acts proven against them were guilty of defrauding the United States.

The indictment now under review charges that by the scheme above outlined the defendants sought to deceive Kahnweiler's Sons and their purchasers and the government's inspectors, and to cause the inspectors unwittingly to approve the life preservers that might be made out of the blocks manufactured by the defendants. Unquestionably, the acts charged show that the defendants intended to deceive and defraud Kahnweiler's Sons. But, to constitute a crime under section 5440, the defendants must have conspired to defraud the United States. Assuming on these demurrers, as I must do, that the acts charged in the indictment are true, it appears that the Nonpareil Corkworks were notified of the shortage in weight of the 1,750 blocks first delivered, and that they were requested "to make the said blocks heavier, so that eight of them would weigh at least six pounds, and so pass inspection under the laws and regulations aforesaid when used in such life preservers." The Nonpareil Corkworks therefore had notice of the purpose for which Kahnweiler's Sons intended to use the blocks, and, after receiving that notice the defendants, according to the charge in the indictment, conceived and carried out the infamous scheme of concealing in each of the 250 blocks last delivered a half pound of iron. The evident purpose of such concealment was to lead the inspectors to believe that the life preservers made from the blocks furnished by the Nonpareil Corkworks each contained "at least six pounds of good cork," and thus to induce them to approve what, if the facts should be known, they could not approve. Such deception of the agents of the United States for such a purpose is a deprivation of the United States of a right essential to the due administration of the law, and a defrauding of the United States, within the meaning of section 5440. The indictment charges a conspiracy to commit this fraud and acts by two of the defendants to give effect to the conspiracy. The case clearly comes, I think, within the doctrine of the authorities above cited.

The demurrers must be overruled, and the defendants required to plead.