UNITED STATES v. MOORE et al.

(Circuit Court, D. Oregon. October 11, 1909.)

No. 2,907.

1. CONSPIRACY (§ 43*)—INDICTMENT—CONSTRUCTION.

An indictment charging that defendants did conspire, combine, confederate, and agree together to defraud the United States, by corruptly and for their own gains administering and procuring the administration of Act Cong., March 3, 1901, c. 853, 31 Stat. 1133 (U. S. Comp. St. 1901, p. 3769), appropriating money to survey public lands, in a manner contrary to the true intent and purpose thereof, and wasteful of the money so appropriated and apportioned, prejudicial to the welfare and interest of the United States and the public service thereof, did not charge a conspiracy

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to defraud the government of its money or property, but charged a conspiracy to defraud the United States by corruptly administering an act of Congress.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 97; Dec. Dig. § 43.*]

**2.** CONSPIRACY (§ 33*)—PURPOSE—ADMINISTRATION OF STATUTE.

A conspiracy to defraud the United States by corruptly administering an act of Congress, contrary to the true intent and policy thereof, constitutes an indictable offense under Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), prohibiting a conspiracy to defraud the United States in any manner or for any purpose.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*]

**3.** CONSPIRACY (§ 33*)—STATUTE—"DEFRAUD."

The term "defraud," as used in Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), prohibiting a conspiracy to defraud the United States in any manner or for any purpose, should not be construed as limited to frauds respecting property rights, but includes the deprivation of any right by deception or artifice; the act being intended to secure the wholesome administration of the laws and affairs of the United States in the interests of the government.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 97; Dec. Dig. § 33.*

For other definitions, see Words and Phrases, vol. 2, pp. 1947–1949; vol. 8, p. 7631.]

**4.** CONSPIRACY (§ 23*)—DEFENSE.

A conspiracy consists of a combination between two or more persons to do a criminal or an unlawful act, or a lawful act by criminal or unlawful means, including, as an essential element, a corrupt motive.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 32; Dec. Dig. § 23.*

For other definitions, see Words and Phrases, vol. 2, pp. 1454–1461; vol. 8, p. 7613.]

**5.** CONSPIRACY (§ 43*)—INDICTMENT—MOTIVE.

In an indictment for conspiracy, the corrupt motive may be alleged, either by charging that the object of the conspiracy is to accomplish an unlawful act, in which case the intent is made to appear by the charge of a combination to do the unlawful act, or by charging a combination to do the lawful act, or the act innocent in itself by unlawful means, where the intent must appear by an allegation of the means.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 86, 88; Dec. Dig. § 43.*]

**6.** CONSPIRACY (§ 43*)—INDICTMENT—MOTIVE.

Where it is alleged that certain persons confederated to do a lawful act by criminal means, the indictment must charge that the means employed were attended by a corrupt motive.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 86, 88; Dec. Dig. § 43.*]

**7.** CONSPIRACY (§ 33*)—FRAUD—COMPLETION OF OFFENSE.

Where a conspiracy is formed to defraud the United States in any manner, in violation of Rev. St. § 5440,[1] the offense is complete when the conspiracy is formed, and the conspirators are subject to prosecution whenever one or more of them has done any act in the furtherance of the unlawful scheme devised and agreed on; it being, therefore, sufficient that the conspiracy, when formed, was attended with corrupt motives and was for a corrupt purpose.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 60; Dec. Dig. § 33.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
[1] U. S. Comp. St. 1901, p. 3676.

8. CONSPIRACY (§ 43*)—FRAUD—CORRUPT MOTIVE.

An indictment for conspiracy, alleging that defendants conspired to procure the maladministration of Act Cong. March 3, 1901, c. 853, 31 Stat. 1133 (U. S. Comp. St. 1901, p. 3769), appropriating money for the survey of public lands in a specified order, by procuring the use of such funds for the survey of lands which were nonagricultural and the subject of fictitious entries, sufficiently charged the conspirators' corrupt purpose, and was therefore not objectionable for failure to allege that defendants had guilty knowledge of the falsity of the entries.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. § 88; Dec. Dig. § 43.*]

Rufus Moore and others were indicted for conspiracy. On demurrer to the indictment. Overruled.

The pending controversy is upon the demurrer to an indictment charging the defendants with having entered into a conspiracy to defraud the government. The indictment presents that, by an act of Congress entitled "An act making appropriations for sundry civil expenses of the government for the fiscal year ending June thirtieth, nineteen hundred and two, and for other purposes," approved March 3, 1901 (31 Stat. 1133, c. 853 [U. S. Comp. St. 1901, p. 3769]), the sum of $325,000 was appropriated for surveys and resurveys of the public lands of the United States, to be immediately available. In expending the appropriation preference is required by the act to be given, first, in favor of surveying townships occupied, in whole or in part, by actual settlers, and lands granted to the states by certain designated acts; second, to surveying under such other acts as provide for land grants to the several states, except railroad land grants, etc.; other surveys to be confined to lands adapted to agriculture, lines of reservations, except forest reservations, and lands within boundaries of forest reservations. The act also fixes the rate of compensation to be allowed for making surveys. Out of the sum so appropriated $22,000 was set apart by the proper officers of the Department of the Interior for making surveys and resurveys in the state of Oregon, in accordance with the above provisions of law.

The indictment further presents that on the 18th day of April, 1902, Henry Meldrum, then Surveyor General of the United States for Oregon, George E. Waggoner, then chief clerk in the office of the Surveyor General, David W. Kinnaird, then an examiner of surveys of the United States, Rufus S. Moore, then a land surveyor, and John W. Hamaker and Frank J. Van Winkle, then notaries public for the state of Oregon, "unlawfully did conspire, combine, confederate, and agree together, and with divers other persons to the said grand jurors unknown, to defraud the said United States, by corruptly, and for their own gain, profit, and benefit, administering and procuring the administration of the said act of Congress in a manner contrary to the true intent and policy thereof, and wasteful of the moneys so appropriated and apportioned, and prejudicial to the interests and welfare of the said United States and the public service thereof, to be accomplished in the way now here described," namely, the said defendants were to take advantage of the fact that there had been filed in the office of the said Surveyor General, at Portland, divers false and forged written applications, purporting to be true and bona fide applications of settlers residing upon unsurveyed lands believed to be in township 27 south and ranges 26, 27, 28, and 29½ east, and township 28 south and ranges 28, 29, 29½, 29¾, and 30 east, of the Willamette meridian, for the survey of the said townships and lands pursuant to law, when in fact, as they, the said defendants, well knew, the said townships and lands were arid, desert, waste, and untimbered lands, and lands not adapted to agriculture, and not occupied, in whole or in part, by actual settlers, by which means the way was prepared for letting a contract between the said Surveyor General, acting for the United States, and some land surveyor, for the survey of said townships and lands, apparently in accordance with the terms and policy of said act of Congress and the regulations and printed manual, but really contrary thereto, and that said Henry Meldrum, as such Surveyor General, was, without advertising for

bids therefor, to enter into a contract with the said Rufus S. Moore, as a deputy surveyor, for surveying all the meander, township, section, and connecting lines necessary to complete the survey of the townships and lands aforesaid, and in consideration of the compensation fixed by the said act of Congress for such work, to be paid out of the moneys so appropriated and apportioned as aforesaid, and was to recommend and secure the approval of the said contract by the Commissioner of the General Land Office, and the said work was then to be done and payment therefor procured out of said moneys so appropriated and apportioned, at rates not higher than the minimum and intermediate rates fixed by the act of Congress. Then follow the allegation of the doing of certain overt acts for carrying into effect the scheme so devised.

To this indictment demurrers have been interposed, assigning as grounds thereof that the indictment does not state facts sufficient to constitute the offense of conspiracy.

Tracy C. Becker, Sp. Asst. Atty. Gen., for the United States.
W. P. Lord, Lionel R. Webster, and Dan. J. Murphy, for defendants.

WOLVERTON, District Judge (after stating the facts as above). A cardinal contention of counsel for defendants is that the indictment is faulty and insufficient, in that it does not set forth by apt language that the object of the conspiracy was to defraud the general government out of its money or property, nor does it contain any certain or definite description of the property of which it was sought to defraud the government, so that it might be readily identified. This contention necessarily proceeds upon the hypothesis that the indictment is drawn upon the theory that the object of the alleged conspiracy was to defraud the government out of public moneys, namely, a portion of the money specifically set apart and apportioned by Congress and the proper officers of the Department of the Interior for the survey of certain public lands. Indeed, it is stoutly urged that the indictment, taken as a whole, shows that such is the theory upon which it was drawn. I am not impressed that such is the theory and purpose of the pleader. The specific charge of the indictment in this relation, stripped of all inducement or matter intended to show the relationship of the parties defendant, is that they—

"did conspire, combine, confederate, and agree together, and with divers other persons to the said grand jurors unknown, to defraud the said United States, by corruptly, and for their own gain, profit, and benefit, administering and procuring the administration of the said act of Congress in a manner contrary to the true intent and policy thereof, and wasteful of the moneys so appropriated and apportioned, and prejudicial to the interests and welfare of the said United States and the public service thereof."

There is no language here apt and adequate from which one can reasonably or legitimately conclude that the object of the conspiracy was to defraud the government out of its moneys, or any of its property or property rights. It would have been quite easy to say so in plain and simple terms, if it was the purpose of the pleader to so charge, and there could have been no controversy or dispute about it. Nor does the employment of the words "for their [the defendants'] own gain, profit, and benefit," and "wasteful of the moneys so appropriated," aid the indictment upon the theory that the scheme was to defraud the government of its money or property, except by the sheerest inference, which is not permissible in criminal pleadings. The language should be so direct in such a charge as to render the purpose

of the pleader·clearly manifest; that is to say, the charge should be so specific and certain as that there could be no two opinions touching the purpose respecting the subject-matter of which it is proposed to defraud the government.

It is argued by the honorable assistant to the Attorney General that:

"As the design and natural result of the conspiracy, as alleged, is to defraud the United States out of its money or property, the indictment is good."

But we must judge of the design of a conspiracy by what is alleged concerning its purpose and object. The manifest purpose, however, is so aptly stated—namely, to defraud the United States by corruptly administering and procuring the administration of the said act of Congress, contrary to the true intent and policy thereof—as to exclude the theory that the purpose was something else, without apt statement as to that also. It is not possible that this plain purpose, by reason of some expressions attending it not sufficient to charge another purpose, can be tortured into charging such another purpose. That theory of the charge, therefore, cannot be maintained.

This brings us to the chief controversy in the case, which is whether the charge of a purpose to defraud the government by corruptly administering the act of Congress, contrary to the true intent and policy thereof, is a purpose within the intendment of section 5440 of the Revised Statutes (U. S. Comp. St. 1901, p. 3676), defining the offense of conspiracy and providing for its punishment. Section 5440 as it now stands is amendatory of section 30 of an act to amend existing laws relating to internal revenue, and for other purposes, adopted March 2, 1867, c. 169, 14 Stat. 484. The offense as originally denounced did not contain the words "or for any purpose." It simply read, "or to defraud the United States in any manner whatever." In all other respects the provision is substantially the same. By the revision of 1878 said section 30 was transferred from the internal revenue law to a place in the law concerning "Crimes," and arranged within the subdivision of crimes entitled "Crimes Against the Operations of the Government." It would seem, therefore, to have been the intention of Congress to give to the statute a more comprehensive signification than would ordinarily attach thereto in its original enactment. As it originally·stood, it might have been argued that it had relation only to defrauding the government out of its revenue; but, when transferred to the general criminal statute, it was thenceforth to be applied in a more general sense, and the change of phraseology would further indicate a design to make it more searching and comprehensive by the very terms of the act. We have the following interpretation of the statute in its original phraseology by Lowell, District Judge, in United States v. Whalan, Fed. Cas. No. 16,669. He says:

"The act relates to various matters connected with the internal revenue department and the various taxes to be assessed. There is, among others, this general provision of law, which has a wide application, and covers all frauds which human ingenuity can devise."

And, speaking further of the word "conspiracy," he continues.

"But in this statute the word has a more comprehensive meaning, because it includes defrauding the United States in any manner whatever, whether

the fraud had been declared a crime by any statute or not. It is therefore immaterial to consider whether the acts were a crime independent of the statute, if there is shown a conspiracy to defraud the government."

This is a case, it is true, where the conspiracy charged was to defraud the government out of certain of its taxes upon spirits in storage; but the comprehensive language of the learned judge indicates his view of the broad scope of the statute, even in its first enactment as a part of a revenue statute. Later cases, decided since the amendment, have crystallized judicial opinion, even broadening the scope of the statute beyond this general language of Judge Lowell, which it must be conceded should be read in connection with the facts of that particular case. I speak of the statute as amended, because the revision was made by legislative authority and sanctioned by act of Congress, so that it was virtually adopted in its present form as a general criminal enactment. One of the first well-considered cases touching the scope of the present statute, as it respects the defrauding of the government "in any manner or for any purpose," is that of Curley v. United States, 130 Fed. 1, 64 C. C. A. 369, determined by the Circuit Court of Appeals of the First Circuit. The indictment in that case sets forth, in short, that one Hughes, desiring to be appointed a letter carrier, for the purpose of procuring the placing of his name upon the civil service list of persons eligible to appointment as letter carriers, and for the purpose of defrauding the United States, unlawfully agreed with Curley that he, Curley, should falsely impersonate Hughes at the civil service examination, and do all acts required by the board of examiners, and sign the name of Hughes to such examination papers as should be delivered to him for examination while he should personate Hughes; that Curley, in pursuance of said conspiracy, did falsely and unlawfully gain entrance to an examination, and for the purpose of defrauding the United States did falsely make a certain writing known as a "declaration sheet." Following these are other allegations of presenting false papers to an officer of the United States. From this statement it will be seen that there is no charge that the conspiracy was for the purpose of defrauding the government out of any money or property, or property rights; but the direct allegation is, as a deduction from the acts narrated, that they were done for the purpose of defrauding the United States unlawfully. In its discussion of the statute, the court says:

"Congress intended to protect the government in its rights, privileges, operations, and functions against all fraudulent operations, impositions upon its rights as well as properties, and to this end employed the most general terms and the broadest possible phraseology. * * * The statute thus clearly and expressly carries its provisions beyond wrongs which had been expressly declared to be offenses against the United States, and extends its provisions so as to embrace fraud in any manner for any purpose."

And again:

"The language of the statute in question is very broad: 'If two persons shall conspire to defraud,' etc. Now, it is, we think, not only reasonable, but the duty is upon us, in considering this statute, to have in mind the object of government in respect to a statute of this kind, as we would have in mind the object of a statute directing itself against wrongs destructive of individual property rights. The chief aim of government being that of protection and

service, it may safeguard itself against conspiracies or combinations, or acts· intended to impair its proper administration, or conspiracies to impair any of the functions of the government. It may declare it unlawful to combine for the purpose of doing any act which obstructs or interferes with the operations of government or any of its departments. The government may unquestionably safeguard itself against being defrauded out of its right to administer an intelligent and honest service in the interests of the people."

But, without pursuing the argument further, the doctrine was there announced that the term "defraud," as employed in the statute, should not be construed as limited to frauds respecting property rights, but to include the deprivation of a right by deception or artifice. The real fraud purposed in that case, and the one that was hurtful to the government, was to foist an unqualified person upon the government as its official and public servant, without authority of law and in contravention of the purpose and provisions thereof. Could there be a more palpable fraud than this, though it does only by a remote inference touch the property rights of the government? An attempt was made to take this case to the Supreme Court by certiorari; but, after an examination of the petition, the court refused the writ. This petition was examined by Hough, District Judge, in United States v. Morse (C. C.) 161 Fed. 429, 436, touching which he has this to say:

"The question whether there could be a conspiracy to defraud by merely deceiving a governmental officer, when neither government nor officer was to be deprived thereby of money or its worth, was presented to the Supreme Court so fully and forcibly, yet so simply and directly, that the refusal of the writ is certainly an authority demonstrating the willingness of the highest tribunal to let the law alone."

Another case in the same thought is Palmer v. Colladay, 18 App. D. C. 426, wherein the Court of Appeals of the District of Columbia says:

"It is claimed by appellee that to defraud the United States must mean to deprive it of money wrongfully, or of something of money value, and that a falsehood or trick by which its officers are deceived in the matter of selecting those who are to perform work for it could not be a fraud against the United States. We do not agree to this proposition. The Civil Service Commission is a legal agency of the United States, created by act of Congress, and through it the President undertakes to find and appoint such persons as may best promote the efficiency of the civil service; and to that end regulations are prescribed by means of which the age, health, character, knowledge, and ability for the branch of service into which he seeks to enter, of each candidate, may be fully ascertained. If falsehoods are imposed upon the persons charged with the duty of ascertaining these qualifications, and made to take the place of facts, then the United States is defrauded, is deprived by deceit of the knowledge justly due to its officers in the proper discharge of its business, and it is thereby liable to obtain a less efficient employé. We think the trial court may properly hold that the appellee's alleged conduct, in co-operation with the candidate in this case, in making a false statement as to her past experience, constitutes an offense under ‚this section 5440, and that such attempt at deception, if successfully carried out, would defraud the United States, within the meaning of the law."

So in the case of United States v. Stone (D. C.) 135 Fed. 392, it was held (quoting from the headnote) that:

"The provision of Rev. St. § 5440 (U. S. Comp. St. 1901, p. 3676), which makes it a criminal offense to conspire ‘to defraud the United States in any manner or for any purpose,’ is not limited in its application to conspiracies to

deprive the United States of money or property, but should be broadly construed to protect the government in its rights, privileges, operations, and functions against all fraudulent operations; and an indictment is good thereunder which avers facts sufficiently showing that defendants conspired to deceive inspectors of the United States in the exercise of their official functions by fraudulently inducing them to approve life preservers which did not in fact comply with the requirements of the federal law, and that they committed overt acts pursuant to such conspiracy."

These cases are of very close analogy to the case at bar, and are therefore much in point in the present controversy. Other cases of not so strong analogy upon the facts hold to the same doctrine in language equally vigorous and unmistakable. In McGregor v. United States, 134 Fed. 187, 195, 69 C. C. A. 477, 485, the court says:

"It may be true that no pecuniary loss would follow the consummation of the conspiracy, and still the result might be that the damage to the government would be serious and far-reaching. The language of the statute clearly contemplates that the loss or damage may be other than a pecuniary one susceptible of accurate calculation. The words 'in any manner or for any purpose' are most comprehensive, and show that the intention of the lawmaking power was to have the statute as broad and as comprehensive as it could possibly be. It surely is a wrong and a great injury to the government when any officer or employé of one of its departments conspires with another to do an act the inevitable result of which will be to corrupt the efficiency and impair the usefulness of such department. To hold that such conduct would not be a fraud upon the government and a loss to it would be as reprehensible as such conduct itself."

This case arose out of an attempt, which was in part accomplished, by certain clerks of the Post Office Department and one Smith, a leather dealer, in league with each other, to defraud the government by inducing the First Assistant Postmaster General to purchase for the government a certain design of mail pouches at a price much in excess of their real value.

In United States v. Bradford (C. C.) 148 Fed. 413, 421, the court says:

"But while, under the proof, the question does not arise in this case, it is beyond question, in my opinion, that to constitute a conspiracy to defraud the United States, under Rev. St. § 5440, it is entirely unnecessary to either allege or prove a purpose to defraud the United States of a thing of pecuniary value. The confusion as to the contention made that to constitute a conspiracy to defraud, under Rev. St. § 5440, there must be a purpose of defrauding the United States of pecuniary value, arises from the failure to distinguish between the purpose of statutes intended to punish cheats and frauds by private persons committed against other private persons, and the purpose of Rev. St. § 5440, which is intended to punish frauds against the sovereign. So far as my knowledge goes, all the statutes of the former class, both in this country and in England, provide, either in express terms or by clear intendment, that the cheating or defrauding must be of a thing of value. Such is the entire extent to which those statutes go, and, of course, in prosecutions under them, it is essential to allege and prove that the purpose of the defendants was to defraud others of things of value. But no such restriction is found in Rev. St. § 5440, either in terms or by intendment. It uses the broadest possible language. It punishes all who conspire to defraud the United States 'in any manner and for any purpose.' It is certainly just as important that the government should not be defrauded with regard to its operations, even if no pecuniary value is involved, as that it should not be defrauded of its property. In fact, I believe that it is far more important that the government should be protected against the former class of frauds, and it would be astonishing, indeed, if Congress had failed to afford protection against such frauds."

173 F.—9

This was a conspiracy to defraud the government by fraudulently obtaining the issuance of certain land scrip.

So, also, in United States v. Lonabaugh (D. C.) 158 Fed. 314, 315:

"The first question may be disposed of in a word, for it was admitted at the argument, as I understood counsel, that in order to bring the defendants within the meaning of section 5440, Rev. St. (U. S. Comp. St. 1901, p. 3676), the words 'conspiracy to defraud the United States' do not necessarily mean that there shall be pecuniary loss or damage to the government, resulting from false representations made to its officers in the performance of their duties, but that any false practice or trick set in motion for the purpose of inducing the government officials, in executing the laws of the United States in cases where they must act upon statements made by the parties interested, to act in a way which would be unlawful if the real truth were known, is a fraud upon the government."

And again, in a late case decided by the Circuit Court of Appeals in this circuit, Jones v. United States, 162 Fed. 417, 425, 89 C. C. A. 303, 311:

"Section 5440 makes it a crime for two or more persons to conspire to defraud the United States, whatever the manner or purpose. 'In any manner or for any purpose' is the language of the statute. To obtain land of the government open to entry under its homestead laws by means of false proof in respect to the entryman's residence or improvement thereon, or for the use or benefit of another, is not only a fraud in fact, but a fraud upon the homestead law, the design of which was to afford those entitled to its beneficent provisions a home for himself and family, and not for speculation either by himself or others. This does not admit of any sort of question."

So, in Hyde v. Shine, 199 U. S. 62, 82, 25 Sup. Ct. 760, 764, 50 L. Ed. 90, the Supreme Court has this to say:

"Whatever may be the rule in equity as to the necessity of proving an actual loss or damage to the plaintiff, we think a case is made out under this statute by proof of a conspiracy to defraud and the commission of an overt act, notwithstanding the United States may have received a consideration for the lands and suffered no pecuniary loss."

It would seem from these authorities that the doctrine could not be more distinctly and clearly resolved. Nor do I think that the case of United States v. Hirsch, 100 U. S. 33, 25 L. Ed. 539, militates against the doctrine, as in that and other cases cited to the same purpose the direct question here discussed was not presented.

Now, if we go back to the indictment, it will be seen in what way the government might be defrauded in the regular and lawful administration of the surveys of its public lands. The government, as well as the individual, is bound to the observance of law and the authorized rules and regulations of its lawfully constituted departments, and the officers and functionaries of the government are especially charged with the observance and execution of the laws, both fundamental and those promulgated in pursuance thereof. So that, when Congress has declared that certain things shall be done, in a way specifically pointed out, it is particularly incumbent upon its officers, intrusted by their functions of office with the execution of the law, to observe the mandates thereof in all substantial respects, and it is necessarily unlawful to accomplish the purpose in any other way or by any other means.

An appropriation was made by Congress for making surveys of the public lands, but it was provided that, in expending the appropriation,

preference should be given, first, in favor of surveying townships oc-
cupied, in whole or in part, by actual settlers, and lands granted to the
states by certain enumerated acts of Congress; and, second, to sur-
veying under such acts as provide for land grants to the several states,
except railroad grants, etc.—other surveys to be confined to lands
adapted to agriculture, lines of reservations, except forest reservations,
and lands within the boundaries of forest reservations—prescribing
the rates to be allowed for making surveys, a part of which appropria-
tion was set apart by the proper officers of the Department of the In-
terior for making surveys and resurveys in the state of Oregon. The
indictment alleges that certain false applications had been made and
filed in the office of the Surveyor General, purporting to be the bona
fide applications of settlers residing upon unsurveyed lands supposed
to be situated in certain designated townships, which lands the defend-
ants well knew to be desert, waste, and untimbered lands, not adapted
to agriculture, and not occupied, in whole or in part, by actual settlers;
and it is charged that the conspiracy was entered into to defraud the
United States by taking advantage of these false applications, and
through and by means thereof, whereby to promote and secure the let-
ting of a contract for the survey of such lands, apparently in accord-
ance with the terms and policy of said act of Congress, but really con-
trary thereto or in contravention thereof. And then it is further
charged that the said Surveyor General, without advertising for bids
for such contract, let the same to the defendant Moore at the compen-
sation fixed by law. Thus it appears that the purpose of the con-
spiracy was to procure the survey of lands which, within the purview
of the act making the appropriation, were not designed nor intended
should be surveyed, and thus entitle the surveyor to the compensation
fixed by the act. This is a palpable maladministration of the law—an
administration in a way clearly not designated by Congress, and, as is
alleged, wasteful of the moneys so appropriated. Supposing the
scheme to have been fully executed, the government would have been
induced, through false applications, fraud, and deception, to survey
portions of its public lands never intended to be surveyed, and thus
to have administered the law in direct perversion of its requirements.
That such a device results in the impairment and subversion of the
proper administration of the law cannot be gainsaid; and that it is in
fraud of the government is quite as apparent.

Considering, then, the very broad terms of section 5440—"to defraud
the United States in any manner or for any purpose"—the conspiracy
alleged would seem to be well within the intendment of the law. As
used in this statute, the word "defraud" has a significance applicable,
not only for the protection of the government in its property rights
and interests, but it was intended also for the protection of the gov-
ernment in securing the wholesome administration of its laws and
affairs in the interests of the governed. The pleader might very ap-
propriately have charged the defendants with conspiring to defraud
the government out of its public moneys, to wit, a portion of the ap-
propriation set apart for the survey of lands in Oregon, considering
the facts as they appear by the indictment; but it seems that he did not
choose to make that specific charge, but has rather chosen to charge

the defendants with the maladministration of the law. And upon this last theory of the charge I hold the indictment good.

It is next insisted that the indictment is faulty in the manner of setting out the means by which it was designed to effectuate the fraud upon the government. Eminent counsel for defendants says:

"It is not enough, in describing the means used, to say that the defendants took advantage of the fact that there were on file certain applications, etc., for the survey of certain lands that the defendants well knew were arid and desert lands. This only charges guilty knowledge as to the character of the lands applied for survey, whereas guilty knowledge should be charged as to the fact of the applications being on file, and that they were false and forged, and that no settlers on said lands described had made such application, and then, that the defendants well knew that the lands described were arid and desert, and not adapted to agriculture, as provided by the act of Congress."

To determine with what particularity the means should be set forth, it is necessary to advert to some well-established rules respecting conspiracies. The general definition of a conspiracy is that it consists of a combination between two or more persons to do a criminal or unlawful act, or a lawful act by criminal or unlawful means, although it is said the definition is not perfectly accurate. It is sufficiently accurate for our purpose here, however. Now:

"If the object of the combination is unlawful, the means contemplated to effect such object are immaterial, either in a criminal prosecution to punish the perpetrators for entering into the combination or to recover of them the damages inflicted by carrying out the object of the conspiracy; and it is not even necessary that the means should have been agreed upon. Where, however, the object of the conspiracy is in itself not unlawful, the object is immaterial, and the illegality of the means used or intended to be used constitutes the offense." 8 Cyc. 622.

It may be further observed that all unlawful conspiracies must be attended with a corrupt motive. Without the corrupt motives of the confederates, no criminality can attach to the confederation. The corrupt motive may be made to appear by the indictment in two ways— one, in charging that the object of the conspiracy is to accomplish an unlawful act. In such case the intent is made to appear by the charge of a combination to do the unlawful or fraudulent act. Benedict, District Judge, says, in United States v. Donau, Fed. Cas. No. 14,983:

"The crime is committed when the combination is made, and the act, of one of the conspirators is not required by the statute to show the intent. That is inferred from the unlawful act of combining to defraud, or to commit an offense."

So it is said in United States v. Stone (D. C.) 135 Fed. 396, supra:

"The charge is that the defendants conspired to defraud the United States, and the intent to defraud will be inferred from the unlawful agreement set forth in the indictment."

The other way is by charging a combination to do a lawful act, or an act innocent in itself, by unlawful means. In such a case the intent or corrupt motive must appear through the allegations of the means employed to effect the object of the conspiracy. To illustrate: If two or more persons are charged with a conspiracy to defraud the government of its revenue, the intent to defraud attends the combination for that purpose, and the means whereby to accomplish the purpose may or may

not in themselves, and disconnected with the unlawful purpose, be corrupt. But, if it be charged that certain persons confederated to do a lawful act by unlawful or criminal means, then it must be that the means employed shall be attended with a corrupt motive, which must adequately appear by the allegations of the indictment. It is well stated by counsel that the offense denounced by section 5440 is the act of conspiring together to do the things enumerated in the section, and the conspirators are subject to prosecution whenever one or more of them has done any act in furtherance of the unlawful scheme devised and agreed upon. Such being the case, it is sufficient if it appears that the conspiracy formed was attended with corrupt motives and for a corrupt purpose.

Now, the offense charged by the present indictment is that of conspiracy to defraud in the first of the two ways, namely, by corruptly, and for the conspirators' own gain, profit, and benefit, administering and procuring the administration of said act of Congress in a manner contrary to the true intent and policy thereof, and wasteful of the moneys so appropriated and apportioned. Thus the corrupt purpose appears as well by direct and positive averment as by inference from the charge to defraud the government. So that it is not essential that the corrupt motive and guilty knowledge be made to appear at every turn of what is alleged touching the means employed to effectuate the unlawful purpose. It is sufficient that there existed on file in the office of the Surveyor General false affidavits, which the defendants knew to be false in the particular that the lands described and which formed the basis for letting the contract were not of the kind that were contemplated by the act of Congress should be surveyed. In the case of United States v. Walsh, 5 Dill. 58, Fed. Cas. No. 16,636, it was not even alleged that the pay rolls presented were false, or not true, and that case is readily distinguishable from this.

I am persuaded that the indictment is sufficient. It follows, therefore, that the demurrer should be overruled.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes