For the reasons indicated, the judgment is reversed, and the cause remanded.

---

STEWART et al. v. PATTERSON.
(No. 8839.)

(Court of Civil Appeals of Texas. Ft. Worth. April 6, 1918. Rehearing Denied May 4, 1918.)

1. COURTS ⟵37(3) — JURISDICTION—WAIVER.
Since jurisdiction over subject-matter cannot be conferred even by express consent, objection may be raised by plaintiff at any stage of the proceeding.

2. COURTS ⟵122 — JURISDICTION — TITLE TO LANDS—"TITLE"—"POSSESSION."
Petition alleging that defendant was interfering with plaintiffs' right of possession of land sufficiently showed jurisdiction in the district

court, under Const. art. 5, § 8, as amended September 22, 1891, and Vernon's Sayles' Ann. Civ. St. 1914, art. 1705, par. 4, and articles 1712 and 1913, since "title" to lands is the means whereby the owner has possession, and "possession" means the actual control of the property and is prima facie evidence of and one of the elements of title, but is not title within such sections (citing Words and Phrases, Second Series, Title; see also, Words and Phrases, First and Second Series, Possession).

3. EQUITY ☞39(1)—RELIEF—RETAINING JURISDICTION.

Jurisdiction having been obtained by reason of suit for injunction, the court may retain jurisdiction to adjudicate all the issues properly involved.

4. LANDLORD AND TENANT ☞326(5, 6) — RENTING ON SHARES—CROPS—CONVERSION—MEASURE OF DAMAGES.

Where tenant set up share-cropping contract, and alleged that landlord and a third person conspired to oust him of the crop, it was not error to award him as damages the value of his share of the crop, without deducting the cost of harvesting, since a conspiracy includes a corrupt motive for which penalty may be inflicted.

5. APPEAL AND ERROR ☞1073(1)—HARMLESS ERROR—JUDGMENT.

Where testimony conflicted as to amount due plaintiff, but some testimony warranted allowance of an additional amount approximately equal to defendant's admitted counterclaim, error in failing specifically to allow the counterclaim or in failing to recite in the judgment the finding as to the counterclaim was harmless.

Appeal from District Court, Tarrant County; R. E. L. Roy, Judge.

Action by W. P. Stewart and another against J. P. Patterson. From the judgment rendered, plaintiffs appeal. Affirmed.

W. B. Paddock, F. M. Bransford, and Theodore Mack, all of Ft. Worth, for appellants. McLean, Scott & McLean, of Ft. Worth, for appellee.

BUCK, J. Suit was instituted by appellant W. P. Stewart against the appellee May 29, 1914, in the District Court of Tarrant county. Plaintiff alleged that he was in possession since January 1, 1914, of a certain tract of land situated in Tarrant county, which had growing thereon a crop of oats about ready for harvesting, and that plaintiff was ready, expecting, and desirous of beginning the harvesting of said oats at the earliest practicable moment that the land should become sufficiently dry to permit the same; that the defendant had interfered, and was threatening to further interfere, with plaintiff's employés working on said premises, and had ordered them to desist and refrain from doing the work they had been instructed to do on said premises, and with threats of violence and by orders given by assumed authority had instructed them to leave said premises and to do no further work thereon; that defendant had threatened plaintiff with violence while on said premises and had sought to intimidate him, and thereby prevent him from cutting and harvesting his said crop of oats. It was further alleged that plaintiff feared

that defendant would attempt by violence to interfere further and prevent the harvesting of said oats, and that the crop would be partially or wholly lost or destroyed by excessive rains and other causes, unless defendant was restrained by the court. It was further alleged that defendant was insolvent, "and that it would be wholly impossible for petitioner to collect from him by law any damage for his wrongful acts, trespass, and interference," and an injunction was prayed for. Upon submission to the court of the petition for injunction the writ was issued.

Defendant, Patterson, filed his answer, alleging:

That he had made and entered into a valid lease contract with H. S. Anderson, the owner of the described property, and in said rental contract it was provided and agreed by said parties that defendant was to have the use, occupation, and enjoyment of said tract of land for one year beginning on the —— day of October, 1913, and that in consideration therefor defendant would pay unto said Anderson a rental of two-fifths of the oat crop which defendant was to plant on said land, and in pursuance of said agreement defendant entered into possession of said land, "and did sow an oat crop thereon, and thereafter and prior to the filing of this suit the said H. S. Anderson and W. P. Stewart, plaintiff herein, conspired and confederated together to dispossess defendant and to take his oat crop which was then growing on said land, and which promised to make a good crop, and that in pursuance of said conspiracy upon the part of said Anderson and said Stewart they thereafter claimed and pretended to this defendant that said land had been rented by the said Stewart, and the said Anderson claimed and pretended that he, the said Anderson had rented said lands to the said Stewart before he had rented same to defendant, and the said Stewart claimed and pretended that he, the said Stewart, had rented said land from the said Anderson before Anderson had rented the same to defendant, and defendant here avers that each and all of said acts and claims were false pretensions, and that the same were made in pursuance and in consummation of said scheme and said conspiracy," etc.

Defendant further alleged that the crop harvested by said plaintiffs, to which defendant was entitled to a two-fifths interest, consisted of the following and of the respective value shown: 975 bales of baled oats of the value of 40 cents a bale, of a total of $390; 600 bushels of oats of the value of 60 cents a bushel, of the total value of $360—making a grand total of $750. Wherefore defendant prayed that Anderson be cited, and that on final hearing defendant have judgment against said Anderson and said Stewart, jointly and severally, for the sum of $450, and all costs of suit, etc.

Anderson filed his answer, pleaded his privilege to be sued in Dallas county, the county of his residence, pleaded a misjoinder of cause, etc. He further denied the allegations of conspiracy contained in the cross-plea of the defendant, Patterson, and denied that he had entered into any contract with Patterson as claimed by him for the possession and use of the land. Other pleadings

were filed, but we think sufficient has been stated to present the issues involved, except that it may be proper to state that plaintiff's petition alleged that if defendant was not restrained it would cause "your petitioner great and irreparable loss, the amount of which, because of the circumstances and because of the conditions and character of the crop, your petitioner is unable and it would be impossible to estimate or ascertain," and further it was prayed that defendant be "restrained from interfering in any way or manner with your petitioner's possession or the right of possession to said crop and to said premises."

Trial was had February 15, 1917, and the cause was submitted to the jury on special issues. The jury found: (1) That Anderson did agree with Patterson that the latter should have the use of the 66-acre tract of land for the purpose of planting and harvesting the oat crop thereon for the year 1914; (2) that such agreement was made October 14, 1913; (3) that Anderson did not agree with Stewart that the latter should have the use of said land for the purpose of planting and harvesting an oat crop thereon; (4) that Stewart and Anderson had conspired together to dispossess Patterson and to take the oat crop which was growing on said land, for the purpose of appropriating the same to their own use and benefit, and of depriving said Patterson of his rights in said crop; (5) that said Anderson and Stewart, in pursuance of such conspiracy, did dispossess said Patterson and did appropriate to their own use and benefit the crop produced on said land during the period of time in controversy in this suit; (6) that the reasonable market value of the baled oats and threshed oats produced on said land during the year 1914 was 25 cents per bale for the baled oats and 40 cents per bushel for the threshed oats; (7) that Anderson advised Patterson that he had leased the said property to Stewart, said advice being by means of letters dated October 14 and 27, 1913; (8) that the total expense of harvesting the said crop of oats was $217.82. Upon this verdict the court entered judgment that Patterson recover from Stewart and Anderson the sum of $263.65, with interest thereon from date of judgment at 6 per cent. per annum, together with all costs, and that plaintiff recover nothing as against Patterson, and that the injunction theretofore issued be dissolved. It was further decreed that H. S. Anderson take nothing by reason of his cross-action against Patterson. In explanation of this last portion of the judgment it should be stated that in his answer Anderson alleged that defendant Patterson owed him the sum of $31 for oats, and that he owed Patterson for work in the sum of $15, and that it was agreed between them that Patterson should pay to Anderson the sum of $16, which he had not done, and Anderson prayed for judgment in the amount claimed to be owing by Patterson. From this judgment Stewart and Anderson have appealed.

[1, 2] Appellants present as fundamental error the claim:

That the trial court was without jurisdiction of the cause "for the reason that there was no allegation in the petition as to the value of the use and occupancy of the land and of the crop that was growing thereon with the harvesting of which it was alleged that the defendant, Patterson, was interfering. Nor did the cross-action or plea in reconvention asserted by the defendant, Patterson, against the plaintiff Stewart and against Anderson confer jurisdiction upon the district court, for the reason that under the allegations thereof only the sum of $450 was claimed by the defendant against the plaintiff Stewart and against Anderson."

It is a peculiar situation when plaintiff, who has invoked the jurisdiction of a court to grant him relief and has been cast in the suit, reverses his attitude, and denies the jurisdiction of his chosen tribunal to award him the relief for which he prayed, and, in this case, partially received. However, since the jurisdiction over the subject-matter of the suit may not be waived and cannot be conferred even by express consent (Masterson v. Ashcom, 54 Tex. 324–327), and may be raised at any stage of the proceeding, with or without seasonably preserved assignment (Shropshire v. Dunson, 32 Tex. 467; Lane v. Doak, 48 Tex. 227; Chrisman v. Graham, 51 Tex. 434), we will direct our attention to the question thus tardily presented. Article 5, § 8, of the state Constitution, as amended September 22, 1891, gives the district court original jurisdiction "of all suits for trial of title of land and for the enforcement of liens thereon," and further provides that the district court "shall have general original jurisdiction over all causes of action whatever for which a remedy or jurisdiction is not provided by law or this Constitution." Article 1705, par. 4, Vernon's Sayles' Tex. Civ. Stats., provides that the district court shall have original jurisdiction "of all suits for the trial of title to land and for the enforcement of liens thereon." Article 1712 provides:

"Subject to the limitations stated in this chapter, the district court is authorized to hear and determine any cause which is, or may be, cognizable by courts, either of law or equity, and to grant any relief which should be granted by said courts, or either of them."

Article 1913, Vernon's Sayles' Tex. Civ. Stats., gives to the judges of the district court the authority, either in term time or vacation, to hear and determine all applications for writs of injunction. We are of the opinion that plaintiff's petition contained jurisdictional allegations sufficient to confer jurisdiction on the trial court when it alleged that defendant, Patterson, was interfering and attempting to interfere with plaintiff's right of possession of the land described. Title to lands is defined as "the means whereby the owner of lands hath a just possession of his property." 3 Bouvier, p. 206; 4 Words and Phrases, 924. Title does not necessarily mean a fee interest, but covers all the lessor estates in land. Snodgrass v. Copple, 203 Mo. 480, 101 S. W. 1090–1096.

"Possession" means actual control of property by physical occupation; while "title" is the means whereby one holds possession of his land. Possession is prima facie evidence of and one of the elements of title. 4 Words and Phrases, 924. If it could be reasonably contended that the district court did not have jurisdiction by reason of the question involved being one affecting the title to land, concerning which we have no doubt; yet we think the district court would have jurisdiction under article 1712, Vernon's Sayles' Tex. Civ. Stats., and article 5, § 8, of the Constitution. Gamel v. Smith et al., 3 Tex. Civ. App. 22, 21 S. W. 628; Voightlander v. Brotze, 59 Tex. 286; Handel v. Elliott, 60 Tex. 145; Bounds v. Kirven, 63 Tex. 159.

[3] Jurisdiction having been obtained by reason of the injunctive proceedings, the court was authorized to retain jurisdiction to adjudicate all the issues properly involved. Savings .& Loan Co. v. Peck, 20 Tex. Civ. App. 111, 49 S. W. 160.

[4] Complaint is made that the court applied an improper measure of damages, and that the judgment rendered is excessive. The evidence showed that there were 875 bales of baled oats produced on the land for the year 1914, which the jury found was of the market value of 25 cents a bale. Stewart testified that he threshed 553 bushels of oats, while one of appellee's witnesses testified that there were 600 bushels of oats threshed, lacking "a little bit." This witness, J. D. Rice, testified:

"Now, whether it was a bushel and a half or 2 bushels that it lacked being 600, I don't remember, but I know it lacked just a few bushels of being 600."

The jury found the oats were worth 40 cents a bushel at the thresher. If we take Stewart's testimony as the basis, the threshed oats would have been worth $221.20, making the entire crop of the value of $439.95. Three-fifths of this would have been $263.97. The judgment rendered was for $263.65. Hence it is evident that the court did not deduct from the value of the crop, or from Patterson's three-fifths of the crop, the cost of harvesting, which the jury found was $217.82. Appellants assign this as error. In Tignor v. Toney, 13 Tex. Civ. App. 518, 35 S. W. 881, it was held that, where the rental contract is such that the landowner and cropper are tenants in common, and the farmer, after the crops are planted, wrongfully dispossesses the latter, and himself completes the cultivation, the tenant may, after the crops are matured, sue for his individual share and for partition, or, if such share cannot be had, for its value, and held that the rule applied that personal property illegally or tortiously held can be retaken by the rightful owner in any new form in which it may be put by the labor of the defendant, without reference to the increase of value by such change of form, unless the taking was not willful, but innocently done, as by mistake. In Fagan v. Vogt, 35 Tex. Civ. App. 528, 80 S. W. 664, it was held that one tenant in common suing to recover for wrongful conversion by a cotenant of his interest in a growing crop cannot be charged with the cost of gathering such crop. In Crews v. Cortez, 102 Tex. 111, 113 S. W. 523, 38 L. R. A. (N. S.) 713, the Supreme Court, on certified question, after reviewing the two above-cited cases, and also the case of Waggoner v. Moore & Stevens, 45 Tex. Civ. App. 308, 101 S. W. 1058, in which this court had concluded that the proper measure of damages to be applied was the reasonable market value of a crop belonging to the tenant, less what he might have earned after the breach of the contract, plus the expense of planting, cultivating, gathering, and marketing the crop, held that, where a tenant of land is wrongfully dispossessed by the landlord after the crops have been planted and partly gathered, he may recover as damages the value of his contract share of the matured crop, less such compensation as could reasonably be obtained in other employment during the remainder of the term, and such expense for labor outside that of himself and family as he would have incurred in maturing and harvesting the crop; in other words, that the penalizing rule applied to a conversion, invoked in Fagan v. Vogt and Tignor v. Toney, supra, should not be applied to a mere breach of executory contract on the part of the landlord. In this case the court said:

"It may be that the trial court proceeded upon the theory laid down in the cases of Tignor v. Toney and Fagan v. Vogt, supra. We have not found any other authority for the application of that doctrine to such cases as this where the" wrongful limitation "was the breach of an executory contract for the raising of crops; the breach occurring when the crops were immature. The authorities cited above from other states lay down substantially the measure of damages as we have defined it, applied in cases where the crops were growing as well as in those in which they had not been sown when the breaches occurred. The doctrine applicable where the property of one is taken and converted by another by a willful trespass and without bona fide claim of right does not furnish the rule for cases like this, where the wrong done consists in the breach of a contract under which the crops are to be produced. The rights of the parties are founded on the contract, and the wrong done is compensated for when the injured party is allowed the full value which he would have produced, less the expense of which he has been relieved."

But in the instant case defendant, Patterson alleged more than a mere breach of an executory contract on the part of Anderson and Stewart. He alleged a conspiracy entered into by and between these two to dispossess him, Patterson, and to take his oat crop which was then growing on the land, and that in pursuance and furtherance of this conspiracy these two claimed and pretended that Stewart had entered into a contract with An-

derson for the rental of this land prior to the date of contract claimed by Patterson. Hence we are of the opinion that the trial court did not improperly apply the rule which visits a penalty upon him who willfully and wrongfully, without reason or excuse, or claim of mistake, converts the property of another to his own use and benefit. In Lee Tung v. Burkhart, 59 Or. 194, 116 Pac. 1066, the Oregon court held that a conversion of property is an act of malfeasance, and not a mere nonfeasance; a positive wrong, and not the mere omission of what is right. See 1 Words and Phrases, p. 1030 et seq. The jury found that Stewart and Anderson entered into a conspiracy to dispossess Patterson and to take his oat crop. The court properly instructed the jury that a conspiracy was an agreement entered into by two or more persons for the purpose of doing a wrongful act. A "conspiracy," it is said, includes, as an element a corrupt motive. United States v. Moore (C. C.) 173 Fed. 122. If Anderson, the landlord, acting alone, had breached the contract of rental which the jury found he had made with appellee, it is probable that the measure of damages as applied in the Crews v. Cortez Case, supra, would here obtain, but when he entered into a conspiracy with another he is responsible and liable for the things done and the acts committed in the pursuance of such conspiracy, and is liable for the consequences reasonably flowing therefrom, and we think, the same measure of damages would apply to him as to his co-conspirator.

[5] It is further urged that the judgment is excessive, because Anderson was entitled to a credit of $16, under his plea that in the settlement made theretofore with Patterson the latter owed him and promised to pay him said amount. In the first place, it is questionable whether said $16 which defendant Anderson alleged was agreed upon between him and Patterson could have been pleaded as an offset against Patterson's claim for damages for the tort alleged, which question, however, we do not decide. Moreover, Patterson testified that he got from Anderson only 60 bales of oats, and that he was to give him 20 cents a bale therefor. In his pleadings Anderson admitted that the work done by Patterson for him was of the value of $15, and Patterson testified that Anderson had never paid him for that work. If not, and Patterson's testimony be accepted, as the court and jury had a right to do, Patterson's claim against Anderson as to this matter would have exceeded Anderson's claim against him. But appellants urge that the jury found in answer to a special requested issue that Patterson owed Anderson for baled oats bought in the fall of 1913 $31. This finding does not seem to have been entered in the judgment as were the other findings, and no objection seems to have been made to the judgment on account of such omission, but if the testimony of Patterson's witness J. D. Rice as to the number of bushels of threshed oats was believed by the court, and no request for a finding by the jury as to the number of bushels harvested were made, the court had the right to find, and we may impute to him the finding, that there was in fact practically 600 bushels of oats. This would increase the value of the crop alleged to have been converted to the extent of some 45 or 47 bushels, which at 25 cents per bushel have amounted to $16, lacking a few cents. Hence we conclude that no material and prejudicial error is shown as to this matter.

All assignments are overruled, and the judgment is affirmed.

Affirmed.